NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD HOFFMAN, individually and on behalf of those similarly situated, | Civil Action No. 14-3291 (SDW)(SCM) |
| Plaintiff, | |
| v. | **OPINION** |
| NORDIC NATURALS, INC., | January 14, 2015 |
| Defendant. | |

**WIGENTON**, District Judge.

Before the Court is Defendant Nordic Naturals, Inc.'s ("Defendant" or "Nordic Naturals") Motion to Dismiss the Complaint filed by Plaintiff Harold Hoffman, Esq.[1] ("Plaintiff" or "Hoffman") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12-1). Also before the Court is Hoffman's motion for limited discovery on the issue of this Court's subject matter jurisdiction. (ECF No. 13). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Venue is proper under 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed herein, Defendant's motion to dismiss is **GRANTED**, Plaintiff's motion for limited discovery is **DENIED**, and the Complaint is **DISMISSED WITH PREJUDICE**.

---

[1] Plaintiff has previously filed numerous suits against several companies similarly alleging misrepresentation, fraud, and deceptive practices. See, e.g., Hoffman v. Cogent Solutions Group, LLC., 2013 U.S. Dist. LEXIS 176056 (Dec. 16, 2013); Hoffman v. Supplements Togo Mgmt., LLC, 18 A.3d 210 (App. Div. 2011); Hoffman v. Hampshire Labs, Inc., 963 A.2d 849 (App. Div. 2009); Hoffman v. Asseenontv.Com, 962 A.2d 532 (App. Div. 2009).

I.     **BACKGROUND**

This is the second pro se class action complaint Plaintiff has filed against Nordic Naturals. The initial complaint was filed on or about August 15, 2012 in the Superior Court of New Jersey, Bergen County, Law Division ("Hoffman I"). (Civil Action No. 12-5870, Complaint, ECF No. 1-1). In that Complaint, Plaintiff, on behalf of himself and a putative nationwide class of similarly situated consumers, alleged that Defendant falsely represented that its product *Nordic Naturals Ultimate Omega* ("Ultimate Omega"), an Omega-3/Omega-9 fatty acid fish oil supplement, adhered to stringent "quality, testing and labelling" standards. (Id. at Overview and ¶¶ 3, 10, 12.) According to Plaintiff, "based upon sophisticated, independent laboratory analysis, Defendant's product contained 311% of the claimed concentration of Omega-9 Oleic Acid, a mono-unsaturated fatty acid associated with increased risk of certain cancers as well as respiratory distress syndrome." (Id. at Overview). Based on these allegations, Plaintiff asserted the following claims: (1) Violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 (Counts I-V); (2) Common Law Fraud (Count VI); (3) Unjust Enrichment (Count VII); (4) Breach of Express Warranty (Count VIII); and (5) Breach of the Implied Warranty of Merchantability (Count IX).

On September 19, 2012, Nordic Naturals removed the matter to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  (Notice of Removal, ECF No. 1).  On September 24, 2012, Plaintiff filed a motion to remand the case to state court.  (ECF No. 6). On April 3, 2013, Magistrate Judge Joseph A. Dickson ("Judge Dickson") issued a Report and Recommendation ("R&R") advising this Court to deny Plaintiff's motion for remand. (Hoffman I, ECF No. 16). On April 15, 2013, Judge Dickson's R&R was adopted in its entirety as the Opinion of this Court.  (ECF No. 19).   Thereafter, Nordic Naturals moved for judgment on the pleadings and to strike class allegations pursuant to Fed. R. Civ. P 12(c) and 12(f), respectively.

2

(Hoffman I, ECF No. 34). On April 17, 2014, this Court dismissed the Complaint without prejudice and granted Plaintiff leave to file an amended Complaint within thirty days. (Hoffman I, ECF No. 35, 36).

On April 29, 2014, rather than amend his Complaint, Plaintiff filed the instant class action Complaint ("Compl." or "Hoffman II") in the Superior Court of New Jersey, Bergen County, Law Division, predicated on the same underlying transaction as in Hoffman I and asserting virtually identical claims as alleged in Hoffman I. (Hoffman II, ECF No. 1-1). Reasserting his contention that Defendants misrepresented the safety, potency, and health benefits of the ingredients in Ultimate Omega "in connection with the sale, marketing and /or advertisement of the Product[,]" Plaintiff alleges five counts of NJCFA violations including Unconscionable Commercial Practice (Count I); Deception (Count II); Fraud (Count III); False Pretense, False Promise and/or Misrepresentation (Count IV); and Knowing Concealment, Suppression and/or Omission of Material Facts (Count V). Whereas Plaintiff filed Hoffman I on behalf of himself and a putative nationwide class of consumers who purchased Ultimate Omega within the preceding six-year period, in Hoffman II, Plaintiff restricted the putative class population to New Jersey consumers who purchased Ultimate Omega in a "60 softgel bottle" in the one-year period between August 2011 and July 2012. (Cf Hoffman I Compl. ¶ 27 and Hoffman II Compl.¶ 27). On May 22, 2014, Hoffman II was removed to this Court. (Hoffman II, Notice of Removal, ECF No. 1-1).

## II.  LEGAL STANDARD

*Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)*

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

3

"[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Smith v. Barre, 517 F. App'x. 63, 65 (3d Cir. 2013) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679.

In Fowler v. UPMC Shadyside, the Third Circuit devised "a two-part analysis." 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the complaint's factual allegations from its legal conclusions. Id. at 210-11. Having done that, the court must take only the factual allegations as true and determine whether the plaintiff has alleged a "plausible claim for relief." Id. (quoting Iqbal, 566 U.S. at 679).

4

*Heightened Pleading Standard under Fed. R. Civ. P. 9(b) for Fraud Claims*

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Park v. M&T Bank Corp., No. 09-cv-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)). Plaintiffs can satisfy this standard by alleging dates, times, places and other facts with precision. Park, 2010 WL 1032649, at *5.

### III. DISCUSSION

Defendant argues that dismissal of Plaintiff's new complaint is required for two reasons: First, Plaintiff's complaint offends the Entire Controversy Doctrine. Second, Defendant posits that even if this Court were to treat Plaintiff's second complaint as an amendment of his first complaint, Plaintiff's failure to cure the pleading deficiencies that doomed his first complaint compels its dismissal. Plaintiff counters, first, that the Entire Controversy Doctrine is inapplicable under the present circumstances because this Court's dismissal of the prior complaint was issued without prejudice and with "leave to re-plead"; second, Plaintiff argues that pursuant to Taylor v. Sturgell, 553 U.S. 880 (2008), the "preclusive effect of a federal court judgment is determined by federal common law[,]" and not the Entire Controversy Doctrine.

    a. **Entire Controversy Doctrine**

5

New Jersey Rule of Court 4:30A provides in pertinent part, that "non-joinder of claims required to be joined by the Entire Controversy Doctrine shall result in the preclusion of the omitted claims to the extent required by the Entire Controversy Doctrine." R. 4:30A. The entire controversy doctrine serves three fundamental purposes: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494, 502 (N.J. 1995). Use of the doctrine, however, "is discretionary and clarification of the limits of the doctrine is best left to case-by-case determination." Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509, 513 (N.J. 1995); see Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999) ("As an equitable doctrine, [the entire controversy doctrine's] application is flexible, with a case-by-case appreciation for fairness to the parties.").

The Third Circuit has described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 560 A.2d 1169, 1172 (N.J. 1989); see also N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); Smith v. Red Top Taxicab Corp., 111 N.J.L. 439, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon."). Like its "blood relative[]" res judicata, the entire controversy doctrine is an affirmative defense,

Rycoline Prods., 109 F.3d at 886, and it applies in federal courts "when there was a previous state-court action involving the same transaction," Bennun v. Rutgers State University, 941 F.2d 154, 163 (3d Cir. 1991). If anything, "[t]he entire controversy doctrine reaches more broadly than the 'same cause of action' requirement of traditional res judicata doctrine." Melikian v. Corradetti, 791 F.2d 274, 279 (3d Cir. 1986).

Contrary to Plaintiff's contention that the entire controversy doctrine does not apply "to a federal court's interpretation of a prior federal decision[,]" the Third Circuit has consistently held that the entire controversy doctrine is "applicable in state court actions as well as cases requiring the application of New Jersey state law in this Court." Studio 45 Discotheque, Inc. v. City of Union City, 292 Fed. Appx. 197, 198 (3d Cir. 2008); Paramount Aviation, 178 F.3d 139, n.4 (3d Cir. 1999) (observing that the entire controversy doctrine "has indeed been invoked even when the previous suit was in another state or in a federal court."). As Plaintiff's claims in both Hoffman I and II were brought under and require the application of New Jersey state law, the entire controversy doctrine evidently applies.

This Court finds that the entire controversy doctrine precludes the consideration of Plaintiff's Second Complaint. A party will be precluded from relitigating its claims if three fundamental elements are met: "(1) the final judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Balthazar v. Atl. City Med. Ctr., 137 Fed. Appx. 482, 489 (3d Cir. 2005) (citing McNeil v. Legislative Apportionment Comm'n, 828 A.2d 840, 859 (N.J. 2003); Watkins v. Resorts Int'l. Hotel & Casino, Inc., 124 N.J. 398, 591 A.2d 592, 599 (N.J. 1991)). There is no dispute that the parties involved in Hoffman I are the same parties involved in

7

this action, and Plaintiff does not contend that the claims asserted in the new complaint stem from different transactions or occurrences than those pleaded in Hoffman I. Therefore, the sole issue is whether this Court's dismissal of the complaint in Hoffman I constituted a valid and final decision on the merits. Indeed, the complaint in Hoffman I was dismissed without prejudice and with leave to file an amended complaint within thirty days. However, Plaintiff's decision not to amend his complaint before the thirty-day deadline elapsed—and to essentially abandon his federal suit in favor of filing an identical complaint in state court—effectively converted this Court's interlocutory decision into a valid, final order of dismissal. As such, Plaintiff's second complaint is barred by the entire controversy doctrine.

### b. Failure to state a claim under the NJCFA

Even if this Court were to assume, *arguendo*, that the entire controversy doctrine did not apply and that Plaintiff's second complaint should be treated as an amendment of his first complaint, Plaintiff's claims nevertheless fail for the same reasons that the complaint in Hoffman I was dismissed. In dismissing Hoffman I, this Court concluded that Plaintiff's NJCFA claims failed to meet the heightened pleading requirement outlined in Fed. R. Civ. P. 9(b).[2] Specifically, this Court held that Plaintiff did not allege causation and ascertainable loss with requisite specificity. Plaintiff failed to cure these pleading deficiencies in his second complaint.

To succeed on a claim under the NJCFA, a plaintiff must show (1) an unlawful practice by defendant, (2) an ascertainable loss on the part of plaintiffs, and (3) a causal relationship between the defendant's unlawful conduct and the plaintiffs' loss. Cox v. Sears Roebuck & Co., 138 N.J.

---

[2] In Hoffman I, Plaintiff alleged NJCFA and common law claims, whereas in Hoffman II, all five counts of Plaintiff's complaint rest solely upon the NJCFA. Additionally, no new NJCFA claims are being asserted in Hoffman II that were not pled in Hoffman I. Consequently, this Court need not discuss the basis for dismissing Plaintiff's common law claims in Hoffman I.

2, 24 (1994). The first element of an NJCFA claim, an unlawful practice by defendant, "typically involves an affirmative act of fraud and can arise from an affirmative act, an omission, or a violation of an administrative regulation." Adamson v. Ortho-McNeil Pharm., Inc., 463 F. Supp. 2d 496, 501 (D.N.J. 2006). "The misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, [and] made to induce the buyer to make the purchase." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350, 366 (1997). Next, to properly plead an ascertainable loss, a plaintiff must allege facts showing "either an out-of-pocket loss or a demonstration of loss in value." Dist. 1199P Health and Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 530 (D.N.J. 2011) (internal citations omitted). Finally, a plaintiff must show a causal nexus between the misrepresentation or concealment of the material fact by defendant and the loss suffered by any person. Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 526 (D.N.J. 2008).

In relevant part, the pleadings in Hoffman I and Hoffman II are largely indistinguishable. Regarding unlawful conduct, in Hoffman I, Plaintiff contended that Defendant engaged in conduct proscribed by the NJCFA by misrepresenting the quality, testing and labeling standards of its product because Ultimate Omega allegedly contains 311% of the claimed concentration of Omega-9 Oleic Acid. (Hoffman I Compl. at Overview). He further asserted that Defendant fraudulently claimed it is "committed to delivering [to consumers] the world's safest . . . omega oils" and that it has achieved 'award-winning' purity levels." (Id.) In finding that Plaintiff alleged insufficient facts to establish that Defendant engaged in unlawful conduct under the NJCFA, this Court observed that "even taking Plaintiff's claim that Ultimate Omega contained 311% more Omega-9 Oleic Acid as true, does not necessarily make Defendant's claims of 'world's safest' and 'award

winning' false. This would depend on how Defendant's products compare to others in the industry, which Plaintiff does not specify." Hoffman I, 2014 U.S. Dist. LEXIS 53125, at * 12.

In Hoffman II, Plaintiff similarly challenges the veracity of Defendant's "promises and marketing representations that its product formulations adhere to the highest and most rigorous quality and testing standard." (Hoffman II Compl. at Overview). Plaintiff likewise cites to an unidentified "independent, sophisticated laboratory analysis" as the source of his allegation that Defendant's product contains an undisclosed 311% overdose of Omega-9 Oleic Acid, "a mono-unsaturated fatty acid associated with increased risk of certain cancers as well as respiratory distress syndrome." [3] (Hoffman II Compl. at Overview). Needless to say, this Court remains steadfast in its opinion that these allegations of unlawful conduct do not suffice under the NJCFA's heightened pleading standard.

The only notable revision Plaintiff made to his unlawful conduct pleadings does little to cure the pleading deficiencies that resulted in the dismissal of Hoffman I. In his second complaint, Plaintiff contends that Defendant fraudulently induced consumers to purchase Ultimate Omega by labeling it a "Pharmaceutical Grade fish oil" when "neither the FDA, nor any other governmental, or non-governmental recognized authority, pharmacopeia, or entity of any sort has ever established Pharmaceutical Grade standards for fish oil products or supplements . . ." (Hoffman II Compl. at Overview). Yet again, Plaintiff does not specify whether or how he relied upon the representation that Ultimate Omega is of "Pharmaceutical Grade" when he decided to purchase the product.

More importantly, however, even if Plaintiff did rely on the purportedly fraudulent grade designation, Plaintiff must establish that he suffered an ascertainable loss as a result, without which there is no private cause of action. See Weinberg v. Sprint Corp., 173 N.J. 233, 249 (2002) (The

---

[3] Plaintiff generally discusses the findings of a 2013 "medical research" conducted by researchers at Fred Hutchinson Cancer Research Center without citing to a scholarly publication from which he excerpted said findings.

10

New Jersey Supreme Court reiterating that "the [NJCFA] creates a private cause of action, but only for victims of consumer fraud who have suffered an ascertainable loss."). The second element of the NJCFA, "ascertainable loss," is defined as "a cognizable and calculable loss due to the alleged [NJCFA] violation." Solo v. Bed Bath & Beyond, Inc., 2007 U.S. Dist. LEXIS 31088, *7-8 (D.N.J. April 26, 2007) (quoting Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 249 (2005)).  Ascertainable loss may occur "when a consumer received less than what was promised." Union Ink Co. v. AT&T Wireless, 352 N.J. Super. 617, 646 (N.J. App. Div. 2002).  "A plaintiff may show ascertainable loss by 'either out-of-pocket loss or a demonstration of loss in value.'" Green v. Green Mtn. Coffee Roasters, Inc., 279 F.R.D. 275, 281 (D.N.J. 2011) (quoting Thiedemann, 183 N.J. at 248).  An actionable loss is not "hypothetical or illusory." Thiedemann, 183 N.J. at 248.

      Plaintiff alleges that he suffered ascertainable loss (1) "in the form of actual out-of-pocket payment and expenditure"; (2) when he and the class "received for their money, a tainted product less than, and different from, the product promised by Defendant"; and (3) when he and the class "received something less than, and different from, what they reasonably expected in view of Defendant's misrepresentations." (Hoffman II Compl. ¶¶ 23-25.)  These are the same canned buzzwords that this Court deemed "broad and conclusory" and insufficient to "provide the specificity that is required in pleading ascertainable loss" in dismissing Plaintiff's earlier action. Hoffman I, 2014 U.S. Dist. LEXIS 53125, at * 13-14. Moreover, Plaintiff's claimed loss is entirely hypothetical. See Lieberson v. Johnson & Johnson Consumer Co., 865 F. Supp. 2d 529, 541 (2011) ("[A]bsent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss.").

Under the NJCFA, a plaintiff must also demonstrate that his or her ascertainable loss was "attributable to conduct made unlawful by the [Act]." Thiedemann, 183 N.J. at 246. A plaintiff must therefore "plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 15 (N.J. App. Div. 2003). Here, Plaintiff cannot establish causation as he does not allege that he purchased Ultimate Omega because of its representation of oleic acid or because he believed it to be of Pharmaceutical Grade. See Franulovic v. Coca-Cola Co., Civ. No. 07-539, 2007 U.S. Dist. LEXIS 79732, at *25-26 (D.N.J. October 25, 2007) (finding plaintiff did not allege "causation as required in order to maintain a CFA claim" because she did not allege that she purchased the product "because of a certain misleading ad"). Instead, Plaintiff merely alleges that he "was seeking and in need of a product that would, among other things, slow the progression of osteoarthritis and reduce pain associated with such condition." (Hoffman II Compl. ¶ 11). Because Plaintiff has failed to adequately plead any of the elements required under the NJCFA, Plaintiffs NJCFA claims (Counts I-V) are **dismissed with prejudice**.

### c.  Plaintiff's Motion for Discovery on the Issue of Subject Matter Jurisdiction.

Plaintiff's complaint was removed to federal court pursuant to CAFA. (Hoffman II, Notice of Removal, ECF No. 1-1). Plaintiff now claims that "Defendant's assertion of CAFA jurisdiction is highly dubious" and argues that "[l]imited discovery will deliver clarity to the question of whether defendant can ever meet the CAFA monetary minimum." (Hoffman II, ECF No. 18). As earlier noted, whereas Plaintiff purported to represent a nationwide class of "purchasers of Nordic Natural Ultimate Omega for the six year period preceding the filing of [his earlier action][,]" in his second complaint, Plaintiff changed the class definition to assert a state-wide class, reduced the relevant time period from six years to one year, and included only those consumers who

purchased a 60-count bottle, which is priced at $27.95. (Cf Hoffman I Compl. ¶ 27 and Hoffman II Compl.¶ 27).

This is a poorly disguised attempt by Plaintiff to ensure that the aggregate value of the amount in controversy is lesser than the CAFA jurisdictional amount of $5,000,000. Ultimate Omega fish oil supplement is available in three unit sizes: (1) 60-count, sold for $27.95; (2) 120-count, sold for $49.95; and (3) 180-count, sold for $69.95. Plaintiff has provided no reasonable explanation for excluding from the class population consumers who purchased a larger amount of the exact same product at issue. This Court's subject matter jurisdiction was fully addressed by Magistrate Judge Dickson in his Report and Recommendation, which was adopted in its entirety as the conclusions of this Court. (Hoffman I, ECF No. 16). Although moot in light of the foregoing analysis, Plaintiff's motion for discovery would be **denied.**

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **granted**. Plaintiff's Complaint is **dismissed with prejudice** and Plaintiff's motion for limited discovery is **denied as moot**. An Appropriate Order accompanies this Opinion.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties
    Magistrate Judge Steven C. Mannion